## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Chartis Specialty Insurance
Company, f/k/a American
International Specialty Lines
Insurance Company, an
Illinois corporation,

              Plaintiff,

    v.

Restoration Contractors, Inc.,
d/b/a Clean Response, Inc., a
Minnesota corporation, J.W.,
a minor, by and through her parent
and natural guardian, Jennifer Weissman,
individually,

              Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-1160 ADM/FLN

_____

Laura A. McArdle, Esq., Matthew J. Fink, Esq., and James F. Baffa, Esq., Bates & Carey LLP, Chicago, IL; Jonathan A. Strauss, Esq., Flynn, Gaskins & Bennett, LLP, Minneapolis, MN, on behalf of Plaintiff.

Michael L. Weiner, Esq., Yaeger, Jungbauer & Barczak, PLC, Minneapolis, MN, on behalf of Defendants.

_____

## I.  INTRODUCTION

On September 1, 2010, the undersigned United States District Judge heard oral argument on Plaintiff Chartis Specialty Insurance Company's ("Chartis Specialty"), f/k/a American International Specialty Lines Insurance Company, Motion for Summary Judgment [Docket No. 13].  For the reasons set forth below, Chartis Specialty's Motion is granted.

## II. BACKGROUND[1]

Defendant Restoration Contractors, Inc., d/b/a Clean Response, Inc. ("Clean Response") is a Minnesota corporation that performs mold remediation services in residential properties. Compl. [Docket No. 1] ¶¶ 3, 8. Clean Response is insured under policies issued by Chartis Specialty. The first policy was effective from May 4, 2007 to May 4, 2008 (the "2007-2008 Policy") and the second policy was effective from May 4, 2008 to May 4, 2009 (the "2008-2009 Policy"). Id. ¶¶ 18, 19. The policies at issue are "claims" policies that cover only claims made against Clean Response and reported to Chartis Specialty during the policy period or within a certain number of days after the expiration of the policy (thirty days after the expiration of the 2007-2008 Policy and sixty days after the expiration of the 2008-2009 Policy), regardless of when the act occurred.[2] Id. ¶¶ 20, 22; Winthrop & Weinstine, 993 F. Supp. at 1254. "[C]laims-made policies place special reliance on notice." F.D.I.C. v. St. Paul Fire and Marine Ins. Co., 993 F.2d 155, 158 (8th Cir. 1993). Requiring an insured to provide notice to the insurer during a specified period permits the insurer to know exactly which claims fall within the liability period. See id. This allows an insurer to better calculate its future liabilities thereby reducing costs to the insured. Id. Thus, strict compliance with the policy's notice provisions is required. See St. Paul Fire & Marine Ins. Co. v. Futura Coatings, Inc., 993 F.Supp. 1258, 1258 (D. Minn. 1998) (recognizing that if the insured does not give notice within the contractually

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[2] By contrast, "occurrence" policies "provide[] coverage if the insured conduct 'occurred within the term of the policy, even if the term has since expired.'" Winthrop & Weinstine, P.A. v. Travelers Cas. & Sur. Co., 993 F.Supp. 1248, 1254 (D. Minn. 1998) (quoting Esmailzadeh v. Johnson & Speakman, 869 F.2d 422, 424 (8th Cir. 1989)).

required time period, there is "simply no coverage under the policy").

The 2007-2008 policy defined a "claim" as:

> [A] written demand received by an **Insured** seeking a remedy and alleging liability or responsibility on the part of the **Named Insured** for **Loss**.

Id. ¶ 21. The 2008-2009 policy defined a "claim" as:

> [A] written demand received by an **Insured** seeking a remedy and alleging liability or responsibility on the part of the **Named Insured** for **Bodily Injury, Property Damage** or **Environmental Damage.** For the purposes of this Policy, **Claim** does not include a **Possible Claim** that was reported under a prior policy but which has become a **Claim** during the **Policy Period** of this Policy as described in Section III.C.

Id. ¶ 24.

In approximately July, 2007, Clean Response performed mold remediation services at a residential property in St. Paul, Minnesota, occupied by Defendants Jennifer Weissman and her minor child, J.W. Id. ¶¶ 4-5, 9. An employee of Clean Response allegedly sprayed hazardous chemicals throughout the property without properly ventilating the property or warning the tenants that they should leave while the chemicals were sprayed. Id. ¶ 10.

On September 13, 2007, Clean Response received a letter from Robert E. Dolan, Jr. ("Dolan"), the Weissman's attorney. The construction of the letter largely controls the disposition of this case and is therefore set forth in full.

| | |
|---|---|
| LAW OFFICES OF YAEGER JUNGBAUER & BARCZAK, PLC | **REDACTED** |

September 13, 2007

Clean Response, Inc.
480 North Prior Ave
St. Paul, MN 55104

Re:    J.W.

DOI:  7/2/07

Dear Sir/Madam:

Please be advised this office represents       J.W. (minor) in a claim for injuries she sustained on July 2nd, 2007, while living at 452 Michigan Street, St. Paul, Minnesota 55102.  On the date in question Clean Response performed services as the above address at the request of the property's owner, Nathan Nerland.

We are hereby giving you notice of this injury.  Please turn this letter over to your insurance company as soon as possible and have the adjuster handling this file contact the undersigned.

I look forward to hearing from you.

Very truly yours,

YAEGER, JUNGBAUER & BARCZAK, PLC

s/ Robert E. Dolan, Jr.

Robert E. Dolan, Jr.

Clean Response's controller, Doug Johnson ("Johnson"), reviewed the letter, conducted a preliminary investigation into the matter, and, in conjunction with Clean Response's owners, determined "that any possible claim in Mr. Dolan's letter was frivolous and did not merit further consideration."  Johnson Aff. [Docket No. 28]  ¶ 7.  As a result, Clean Response did not notify Chartis Specialty of the correspondence.

Not having received a response, on October 15, 2007, Dolan sent another letter, this time via certified mail.  Again, the full text of the letter follows.

LAW OFFICES OF                                              REDACTED
YAEGER
JUNGBAUER &
BARCZAK, PLC

October 15, 2007

*Via Certified Mail - Return Receipt Requested*

Clean Response, Inc.
480 North Prior Ave
St. Paul, MN 55104

Re:    J.W.
DOI:   7/2/07

Dear Sir/Madam:

Please be advised this office represents        J.W. (minor) in a claim
for injuries she sustained on July 2nd, 2007, while living at 452
Michigan Street, St. Paul, Minnesota 55102.  On the date in
question Clean Response performed services as the above address
at the request of the property's owner, Nathan Nerland.

We are hereby giving you notice of this injury.  Please turn this
letter over to your insurance company immediately.

I ask that the adjuster handling this file contact the undersigned as
soon as possible.

Very truly yours,

YAEGER, JUNGBAUER & BARCZAK, PLC

s/ Robert E. Dolan, Jr.

Robert E. Dolan, Jr.


Johnson reviewed this second letter and believed that Dolan had mistakenly sent the first

letter via regular mail and wanted to send another letter via certified mail.  See id. ¶ 9.  Johnson

again determined the "matter was a frivolous complaint" and did not notify Chartis Specialty.

Id. ¶¶ 9-10.

On April 18, 2008, Clean Response's President, Joe Nedorski, completed an application for a Chartis Specialty insurance policy for 2008-2009.  Compl. ¶ 14.  Nedorski responded "No" to two queries: "Have any pollution claims been previously made against the applicant [Clean Response] or reported under any other Policies?" and "Is the applicant [Clean Response] aware of any fact, circumstance or situation which could result in a claim being made against it or any other person or entity for whom coverage is being sought?"  Id.

In approximately November, 2008, a lawsuit was filed against Clean Response alleging acts or omissions in connection with the services performed at the Weissman home on July 2, 2007.  Id. ¶ 15.  In November, 2008, Clean Response notified Chartis Specialty and sought coverage.  Id. ¶ 16.  In December, 2008, Chartis Specialty denied coverage for the underlying lawsuit.  Id. ¶ 17.

In April, 2010, Chartis Specialty filed this action seeking a declaration that Dolan's letters constituted a "claim" as defined in the policy, and that because Clean Response failed to provide timely notice of the claim, Chartis Specialty has no duty to defend or indemnify Clean Response.  Clean Response answered and Chartis Specialty now seeks summary judgment on its claims.

## III.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Insurance coverage cases are "particularly amenable to summary judgment" because "the interpretation and construction of insurance policies is a matter of law."  John Deere Ins. Co. v. Shamrock Indus., 929 F.2d 413, 417 (8th Cir. 1991).  As there is no genuine issue of material fact and the issue is one of law, the matter is ripe for summary disposition.

When interpreting an insurance policy, courts must ascertain and give effect to the intent of the parties as reflected in the insuring contract.  See St. Paul Fire & Marine, 993 F.Supp. at 1261.  The "insurance contract must be construed as a whole, with unambiguous language given its plain and ordinary meaning."  Id.

## B.  The Dolan Letters Constituted a "Claim" as Defined in the Policies

Chartis Specialty argues that the Dolan letters constitute a "claim" as that term is defined in the policies. Clean Response counters that the Dolan letters do not constitute a "claim" because neither letter makes a demand for a remedy as required for coverage under the policies.

Both parties cite to cases in support of their positions.  Admittedly, the authority is divided on this issue;[3] indeed, as the Eighth Circuit stated in Berry v. St. Paul Fire & Marine

---

[3] Compare Berry v. St. Paul Fire & Marine Ins. Co., 70 F.3d 981 (8th Cir. 1995); Int'l Ins. Co. v. Peabody Int'l Corp., 747 F.Supp. 477, 480 (N.D. Ill. 1990) (letter from a claimant that insured take remedial action qualified as a "claim"); Herron v. Schutz Foss Architects, 935 P.2d 1104, 1107-1108 (Mont. 1997) (letter from a claimant making no specific demand for money, nor stating an intent to hold the insured responsible for claimant's damages, nor requesting that insured contact its insurance carrier constituted a "claim"); with Hoyt v. St. Paul Fire & Marine Ins. Co., 607 F.2d 864, 866 (9th Cir. 1979) (letter was a "request for information and explanation" and not a "claim"); City of Mankato v. League of Minnesota Cities Ins. Trust, No. C8-93-1090, 1993 WL 527886, *2 (Minn. Ct. App. Dec. 21, 1993) (claimant's letters were only

7

Insurance Co., determining what language constitutes a claim and what language does not is a "difference[] of degree." 70 F.3d at 983. In Berry, the Court held that a letter that "does not request payment of a specific dollar amount" can still constitute a "claim" defined as a "demand in which damages are alleged." Id. at 982. The Berry Court stated that where the "inference that [the claimant's] injuries and disability should be compensated in money is unmistakable," and where "anyone receiving the letter would know that [the claimant] was claiming that he was owed money," a "claim" has been made. Id.

Under the reasoning of Berry, the controlling law in this Circuit, the conclusion is inescapable: the individual Dolan letters qualify as a "claim." The letters state that Dolan represents J.W. in a "claim for injuries she sustained," that her injuries resulted from Clean Response's services, and that the letter should be forwarded to Clean Response's insurance company as soon as possible. Although the letters here, like in Berry, did not expressly demand payment or refer to a specific monetary amount, their meaning was clear. The Court construes the letters as a written demand seeking a remedy which therefore, constitutes a "claim" as defined in the policies.

## C. The "Possible Claim" Language is Irrelevant

The policies have a provision which state: "If the Insured first becomes aware during the Policy Period of a Pollution Condition arising out of Covered Operations which is reasonably expected to result in a Claim, then the Insured may provide written notice to the Company . . ." McArdle Aff. [Docket No. 15], Ex. 10 at 15. Relying on this language, Clean Response argues

---

informational) ; Bensalem Twp. v. W. World Ins. Co., 609 F.Supp. 1343, 1348-49 (E.D. Pa. 1985) (letter merely constituted notice that claimant intended to hold insured responsible for a wrongful act).

that it has the option to report possible claims only if it reasonably expects the communication to result in a claim. In support of its contention, Clean Response cites a Ninth Circuit case, <u>Winkler v. National Union Fire Insurance Co.</u>, 930 F.2d 1364, 1366 (9th Cir. 1991). In <u>Winkler</u>, however, the term "claim" was not defined in the policy but potential or threatened claims were described in detail. The court determined that those events or communications which did not rise to the level of a clear demand were merely threatened claims under the terms of the policy.

As noted above, however, this Court has concluded that the Dolan letters were a written demand seeking a remedy such that they constituted a "claim" within the policy definition. Therefore, the separate policy provision addressing a possible claim does not alter the conclusion that a written demand seeking a remedy must be reported to the insurer within the policy's prescribed time frame.

## D. Clean Response's Subjective Evaluation of the Letters is Also Irrelevant

Clean Response argues that its controller, Johnson, reviewed Dolan's letters, conducted a preliminary investigation into the matter, and reasonably determined the claim to be frivolous. Johnson's subjective determination that the claim was frivolous is not relevant to whether the Dolan letters constitute a "claim" because the policy defined "claim" without reference to an individual's reasonable belief about whether a claim was being made. <u>See</u> <u>Int'l Ins. Co.</u>, 747 F.Supp. at 480-81.

## E. The Reasonable Expectations Doctrine is Not Applicable

Clean Response argues that coverage is mandated under the reasonable expectations doctrine set forth in <u>Atwater Creamery Co. v. Western National Mutual Insurance Co.</u>, 366 N.W. 2d 271 (Minn. 1985). In that case, the insured purchased an insurance policy that included

coverage for losses due to burglaries.  When the insured made a claim for burglary, the insurer

denied coverage relying on a provision in the policy that defined burglary as requiring visible

marks of physical damage at the point of entry or exit.  Id. at 274.  The Minnesota Supreme

Court concluded that coverage existed consistent with the reasonable expectations of the insured,

despite the unambiguous policy definition that did not cover those expectations.  Id. at 277-79.

The court found the definition to be a hidden exclusion and determined the provision was

unconscionable due to the unequal bargaining power between the insured and the insurance

company.  Id.

Since Atwater, however, "Minnesota courts have consistently restricted application of the

doctrine to exceptional cases where a policy provision is both a 'hidden major exclusion' and

unconscionable as a result of unequal bargaining power where the insured may have been

misled."  St. Paul Fire and Marine Ins. Co. v. F.D.I.C., 968 F.2d 695 , 702-03 (8th Cir. 1992)

(quoting the district court, St. Paul Fire & Marine Ins. Co. v. F.D.I.C., 765 F.Supp. 538 (D.

Minn. 1991)).  The definition of "claim" was not hidden in the policy and there is nothing to

suggest that Clean Response entered the agreement at a bargaining disadvantage.  Next, courts

around the country have upheld the denial of coverage where, in cases involving claims-made

policies, a claim was not made during the applicable policy period.[4]  And finally, the Eighth

Circuit has cited with approval a district court's conclusion that "claims-made policies are not

against the public policy of Minnesota."  Esmailzadeh, 869 F.2d at 424.

---

[4] See supra note 3 and accompanying text.

**IV.  CONCLUSION**

As discussed above, Dolan's first letter to Clean Response constituted a "claim." Because Clean Response did not timely report the claim to its insurer, Chartis Specialty has no duty to defend or indemnify Clean Response.  Based on this determination, the Court does not reach the issue of whether Chartis Specialty may rely on the "prior knowledge" exclusion or the "known loss" doctrine to decline coverage.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Chartis Specialty's Motion for Summary Judgment [Docket No. 13] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 27, 2010.